**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**FILED
April 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**K.F.,
Claimant Below, Petitioner**

**vs.)   No. 20-0272** (BOR Appeal No. 2054650)
            (Claim No. 2019000953)

**POCAHONTAS MEMORIAL HOSPITAL,
Employer Below, Respondent**


**MEMORANDUM DECISION**

Petitioner K.F.,[1] by Counsel J. Thomas Greene Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Pocahontas Memorial Hospital, by Counsel Charity K. Lawrence, filed a timely response.

The issues on appeal are temporary total disability benefits, medical benefits, and additional compensable conditions. The claims administrator closed the claim for temporary total disability benefits on January 7, 2019. On January 16, 2019, the claims administrator denied authorization of an L4-5 and L5-S1 lumbar fusion. The claims administrator issued a second decision closing the claim for temporary total disability benefits on January 30, 2019. On February 6, 2019, the claims administrator denied the addition of spinal stenosis, intervertebral disc disorder, L5 radiculopathy, intervertebral disc displacement, intervertebral disc degeneration, degenerative osteoarthritis, post-laminectomy syndrome, low back pain, lumbar radiculopathy, lumbar degenerative disc disease, lumbar disc disorder, lumbar myelopathy, lumbar spinal instability, and neuromyopathic fecal incontinence to the claim. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its September 24, 2019, Order. The Order was affirmed by the Board of Review on February 21, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]The Court has elected to use initials in this case due to the sensitive nature of some of the medical evidence discussed.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W.Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]
>
> . . . . (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. West Virginia Office of Ins. Comm'r,* 235 W.Va. 577, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a *de novo* standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. West Virginia Office of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011). With these standards in mind, we proceed to determine whether the Board of Review committed error in affirming the decision of the Office of Judges.

K.F., a nurse, was injured in the course of her employment on July 5, 2018. K.F. sought treatment the following day from Pocahontas Memorial Hospital Emergency Room for lumbar pain after repositioning a patient at work the day prior. X-rays showed mild degenerative changes. The Employees' and Physicians' Report of Injury was also completed that day and indicated K.F. injured her back while repositioning a patient on July 5, 2018. The physicians' section listed the diagnosis as a lumbar strain and stated that K.F. would be on modified duty for five days. The claim was held compensable for lumbar strain on July 12, 2018.

K.F. had a history of lumbar spine issues long before the compensable injury occurred. A July 13, 2001, treatment note from Carilion Clinic indicates K.F. underwent a left L5-S1 discectomy in November of 2002. In June of 2004, she underwent an L5-S1 discectomy. On May 18, 2005, a myelogram was performed for mild lumbar spondylotic changes. It showed mild ventral extradural defects at L3-4 and L4-5. A post-myelogram CT scan showed facet hypertrophy but no stenosis. An August 16, 2010, treatment note from Raymond Harron, D.O., indicates K.F. was doing well, had no pain, and did not require narcotics. February 25, 2011, x-rays showed degenerative disc disease at L5-S1.

Following the compensable injury, K.F. underwent a lumbar MRI on July 30, 2018, which revealed disc space narrowing at L4-5 and L5-S1; bulging and facet joint hypertrophy at L3-4, L4-5, and L5-S1; foraminal narrowing due to osteophytic changes at L5-S1; and a disc herniation at T12-L1. On August 27, 2018, K.F. returned to Dr. Harron for back and right leg pain. K.F. reported

that she was doing well until her compensable July 5, 2018, injury. Dr. Harron diagnosed low back pain, lumbar disc displacement, lumbar disc degeneration, radiculopathy, and spondylosis.

A discogram was performed on September 5, 2018, and K.F. was diagnosed with chronic pain syndrome and degenerative disc disease. A September 13, 2018, lumbar CT scan showed no acute fracture or dislocation, multilevel degenerative disc disease, and moderate bilateral neuroforaminal stenosis at L5-S1. K.F. underwent a lumbar discography on September 13, 2018. The postoperative diagnoses were post-laminectomy syndrome and degenerative disc disease. On September 18, 2018, K.F., returned to Dr. Harron, who recommended an L3-4 and L4-5 interbody/posterior fusion.

In a September 24, 2018, physician review, Rebecca Thaxton, M.D., found that the requested lumbar fusion was not necessary treatment for the compensable injury. She opined that the surgery was indicated for spondylosis. Dr. Thaxton stated that West Virginia Code of State Rules § 85-20-21 states that lumbar fusion is indicate for acute unstable fractures, dislocations, acute spinal cord injuries, and infections. Fusion is not recommended for degenerative disc disease, disc herniation, spinal stenosis without degenerative spondylolisthesis or instability, or nonspecific low back pain. Dr. Thaxton stated that surgery was requested to treat the L4-5 and L5-S1 discs, neither of which are herniated. Dr. Thaxton found no evidence of acute radiculopathy. She noted that the lumbar fusion was recommended after a discogram showed pain at L3-4, L4-5, and L5-S1. Therefore, the surgery was requested to treat pain, not acute myelopathy, instability, or radiculopathy.

Scott Rainey, D.O., performed an independent medical evaluation on November 19, 2018, in which he opined that K.F. sustained a lumbar sprain/strain as a result of the compensable injury. He stated that surgery is not indicated for a lumbar sprain and that the injury should have resolved within three months. K.F. had reached maximum medical improvement for the compensable injury and required no further treatment. Dr. Rainey noted that K.F. had three lumbar spine surgeries prior to the compensable injury. He opined that K.F.'s current complaints were the result of degenerative changes and changes related to the prior surgeries. Further, Dr. Rainey stated that K.F.'s lower extremity symptoms were the result of preexisting degenerative changes in the form of foraminal stenosis. On December 6, 2018, the claims administrator suspended temporary total disability benefits based on Dr. Rainey's finding that she had reached maximum medical improvement and could return to work with no limitations.

In a December 6, 2018, Attending Physicians' Report, John Eilers, M.D., stated that K.F. had various restrictions and was experiencing stool incontinence. Dr. Eilers completed a diagnosis update on December 20, 2018, requesting the addition of unspecified degenerative disc, spinal stenosis, intervertebral disc disorder and L5 myelopathy, intervertebral disc disorder and L5 radiculopathy, intervertebral lumbar disc displacement, and intervertebral lumbar disc degeneration to the claim. He cited Dr. Harron's treatment notes in support of the diagnoses.

Dr. Harron completed a Diagnosis Update on December 26, 2018, requesting the addition of post-laminectomy syndrome, low back pain, lumbar radiculopathy, lumbar degenerative disc

3

disease, lumbar disc disorder, lumbar myelopathy, 5-point instability in the lumbar region, and neuropathic fecal incontinence to the claim.

In a January 7, 2019, Physician Review, Randall Short, M.D., determined that the requested conditions should not be added to the claim. Dr. Short noted that K.F. underwent three lumbar spine surgeries prior to the compensable injury. He concluded that the requested additional conditions preexisted and are unrelated to the compensable injury.

The claims administrator closed the claim for temporary total disability benefits on January 7, 2019. On January 16, 2019, it denied authorization of an L4-5 and L5-S1 lumbar fusion. The claims administrator issued a second decision closing the claim for temporary total disability benefits on January 30, 2019. On February 6, 2019, the claims administrator denied the addition of spinal stenosis, intervertebral disc disorder, L5 radiculopathy, intervertebral disc displacement, intervertebral disc degeneration, degenerative osteoarthritis, post-laminectomy syndrome, low back pain, lumbar radiculopathy, lumbar degenerative disc disease, lumbar disc disorder, lumbar myelopathy, lumbar spinal instability, and neuromyopathic fecal incontinence to the claim.

Dr. Harron testified in a June 17, 2019, deposition that K.F. developed more arthritic degenerative changes and spinal instability at L4-5 as a result of the compensable injury. He stated that the compensable injury caused spondylosis and instability, which requires surgery. Prior to the compensable injury, K.F. underwent three lumbar spine surgeries but was doing well and had returned to work. Dr. Harron testified that K.F.'s prior lumbar spine surgeries were to treat recurrent L5-S1 disc herniations. Dr. Harron stated that he could not say when K.F.'s L3-4 and L5-S1 herniations occurred but that they were most likely due to degenerative changes. He opined that the compensable lumbar sprain caused spinal instability. Dr. Harron admitted that K.F.'s L5-S1 disc issues were the result of her prior injuries and surgeries.

On September 24, 2019, the Office of Judges affirmed the claims administrator's decisions closing the claim for temporary total disability benefits; denying an L4-5 and L5-S1 lumbar fusion; and denying several additional compensable diagnoses. The Office of Judges found that K.F. underwent three lumbar spine surgeries prior to the compensable injury. It also found that K.F. had preexisting degenerative issues dating back as early as 2002. Further, Dr. Harron noted that K.F.'s current symptoms are the same that she suffered in 2002. The Office of Judges determined that neither Dr. Harron nor Dr. Eiler opined that K.F.'s herniated disc was the result of the compensable injury. Therefore, it is more likely than not that the requested additional conditions are the result of K.F.'s prior back surgeries and degenerative changes. Regarding the requested surgery, the Office of Judges found that the physician who recommended lumbar spine surgery, Dr. Harron, cited degeneration as the cause. The Office of Judges therefore concluded that the requested surgery is not necessary treatment for a compensable condition in the claim. Because K.F. was found to be at maximum medical improvement, temporary total disability benefits were found to be properly suspended. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 21, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The record indicates that the requested additional conditions are

the result of K.F.'s prior three lumbar spine surgeries and degenerative changes that began long before the compensable injury occurred. The requested lumbar fusion surgery is aimed at treating those preexisting, noncompensable conditions and was therefore properly denied. Lastly, the claim was properly closed for temporary total disability benefits because K.F. reached maximum medical improvement for her compensable lumbar sprain.

Affirmed

**ISSUED:** April 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton